THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* GONZALO ALMODÓVAR, Defendant and Appellant.

No. 16359. Submitted May 6, 1958.—Decided May 1, 1961.

*William Morales Torres* for appellant. *J. B. Fernández Badillo,
Secretary of Justice, Arturo Estrella, Assistant Secretary of
Justice, Archilla Guenard* and *Héctor R. Orlandi Gómez,
Fiscal* and *Assistant Fiscal of the Supreme Court,* respec-
tively, for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The information filed in this case against defendant Gon-
zalo Almodóvar and codefendant Eulogia Toro Ramírez, for
a violation of Act No. 220 of 1948, reads as follows: "The
above-mentioned defendants Gonzalo Almodóvar and Eulogia
Toro Ramírez, on or about June 3, 1955 and in San Germán,
P. R. ... upon searching the Las Lomas Hotel and the bar
and dance hall next to said Las Lomas Hotel, owned and
managed by Gonzalo Almodóvar and Eulogia Toro Ramírez
... they unlawfully, voluntarily, maliciously and criminally,
*had in their hands and/or possession* lists of three-digit num-
bers followed by a dash and another digit, lists of three-digit
numbers with a small blank space to the right, and another
number and lists of numbers, signs and letters and names of
persons which are used and may be used in the illegal games
of '*Bolita*' and '*Boli-pool,*' which are clandestine combinations
connected with the 'pools' and mutuels of the race-tracks of
Puerto Rico and lotteries."

The Act applicable to the case is § 4 of Act No. 220 of
May 15, 1948, which provides: "Any person caught carry-
ing or transporting or who *has in his possession* for any rea-
son any *papeleta, billete,* ticket, notebook, list of numbers or
letters, slips, or implements which can be used for the unlaw-

ful games of *bolita, bolipul*, combinations connected with the pools or *bancas* of the racetracks of Puerto Rico, and clandestine lotteries, and any person who *possesses*, sells, or in any way transports these or any other similar ones which may be utilized or used in said unlawful games or connected with the practice thereof, shall be guilty of a public offense and shall be immediately arrested and the case shall be brought without delay before the district attorney of the judicial district having jurisdiction on the matter, who shall file the proper information. Such person shall, upon conviction, be punished by imprisonment in jail for a term of not less than six (6) months or more than two (2) years; . . . ."

This appeal is limited to the prosecution against Gonzalo Almodóvar because the defendants requested a separate trial.

■■ Pursuant to § 4, when the person is not caught in fraganti while engaged in the manipulation of the games of "*bolita*," the incrimination of a person for possessing criminal objects is based on the evidence of the relation (immediate control) between the owner and the premises searched, contrary to the presumption provided by § 3 to the effect that if at the time of the search there should be no one in the said premises, it shall be presumed that the person or persons in possession of the premises searched, as lessees, owners, or otherwise, shall be deemed responsible for the unlawful manipulation of the devices found in said premises until evidence to the contrary is presented.

■■ The incriminatory evidence which connects defendant with the premises searched is the following: Detective Rafael Rivera Rosario testifying in favor of The People, declared that during May 27 and June 1, 1955, he saw defendant in the bar next to Las Lomas Hotel; that at said bar the witness and another detective asked for some beer; that the first time it was served by Eulogia Toro; the second time by defendant Gonzalo Almodóvar, and the third time

by Eulogia Toro, and that they paid the latter (t. 77–78). He said that they saw defendant there with a set of keys hanging from the right side of his pants, close to his belt; that with said keys he opened the juke-box of those premises in order to play a record. Besides, they heard him introduce himself to the customers as the owner of that business (t. 78). He said that they saw Gonzalo Almodóvar handling money and ordering waiters William Santiago and Justo A. Rivera to wait on those present.

Carmen Vázquez Casiano, in testifying in favor of The People, said to be the manager of the Las Lomas Hotel (t. 87) and of the bar (t. 90); that Gonzalo Almodóvar and Eulogia Toro "are in the handkerchief business" (t. 88); that Eulogia Toro goes to the business "only at nighttime (t. 89) every night" (t. 90) and that defendant Gonzalo Almodóvar "comes sometimes. Not every night . . . now and then, not regularly." She says that when she (the witness) leaves, Eulogia remains, and also an employee named William Santiago, the bartender (t. 90) remains. This last statement is corroborated by the licenses to sell cigars and cigarettes and to operate a juke-box, issued by the Collector of Internal Revenue in favor of Carmen Vázquez Casiano, which were all issued prior to the search.

Defendant's evidence established the fact that the premises belong to Eulogia Toro Ramírez and are managed by Carmen Vázquez Casiano. Employee William Santiago, identified by the very evidence of The People, as the person in charge of the bar (t. 86) stated that he knows defendant: "he has gone several times to eat at the bar (t. 357) and that defendant paid for his food and did not go there regularly: "he goes to eat today, the day after tomorrow, then doesn't go for one or two weeks" (t. 358). He says that on June 3, 1955 when the detective arrived, the witness was present (t. 358) at the bar "just then I had served Gonzalo Almodóvar his dinner." The statement that defendant was eating

peacefully when the police officers arrived is corroborated by the very evidence of The People (t. 119). He was starting to eat when suddenly, a group of persons arrived . . . that Captain Camacho told Almodóvar "hand me the keys and come with us to the hotel since I have a search warrant for the hotel" and then Almodóvar answered: "I have no keys to hand to you since I am not the owner or manager of this business" (t. 359) "why should I go with you over there?" (t. 360); that then Captain Camacho said: "Anyway, you must come with us and he led him to the hotel." He says that shortly thereafter he heard Captain Camacho's voice, who was shouting (outside the bar): "hey, bring the keys" and the witness who had the keys in the bar, handed them to Eulogia Toro, and she gave them to Captain Camacho and Captain Camacho opened the hotel (t. 360). The statement that when defendant was being led to the hotel, the hotel had already been searched, is established by The People's own evidence (t. 124–125). The witness says that it was Captain Camacho who opened the hotel and "Eulogia Toro was accompanied by a police officer to go upstairs to search my room" (t. 360). He said he knew Eulogia Toro because he worked with her in a workshop (t. 362) belonging to Eulogia Toro "because she paid and was in charge of the workshop" (t. 362). He says that while he worked in the workshop he never saw defendant in the workshop, and he did not know him either (t. 363); that he became acquainted with the defendant after he worked in the Las Lomas Hotel (t. 363); that Eulogia Toro hired him to work in the bar and hotel (t. 363). He says that during the time he has been working in the hotel he has never heard anyone refer to Gonzalo Almodóvar as owner or manager of the hotel (t. 367).

We shall not comment the incriminating evidence which tried to establish extra-marital relations between Gonzalo Almodóvar and Eulogia Toro, because it was belied by the Prosecuting Attorney's own evidence. Summarizing:

Regarding the evidence of The People, which connects defendant with the management of the premises, the testimony of Detective Rafael Rivera Rosario, who testified that defendant once served him a glass of beer at the bar and that he saw him with a set of keys which he had on the right-hand side of his pants, and with said keys he opened the juke-box of the bar in order to play a record, and that he introduced himself to some customers as the owner, is contradicted by the very evidence of The People, since the testimony of the witness for The People, Carmen Vázquez Casiano, positively establishes that the witness was the manager of the hotel and of the bar. This statement of witness Vázquez Casiano is corroborated by evidence which is always supposed to be impartial, unless it is proved that said evidence forms part of a plan or scheme to evade responsibility, such as the licenses issued by the Collector of Internal Revenue in favor of Carmen Vázquez Casiano, to sell merchandise and operate a juke-box. As it may be seen, this is not a case wherein defendant's guilt has been established beyond every reasonable doubt. On the contrary, upon examining the evidence, as a whole, it appears that Gonzalo Almodóvar was not the manager of the premises searched, but that Carmen Vázquez Casiano was such manager.

If the relation of defendant with the premises searched is not proved, the fact that said defendant was present at the time of the search is not, if isolatedly considered, sufficient evidence to determine his guilt, and he must be presumed innocent bystander, *United States* v. *Di Re*, 332 U.S. 581, 586–87, 92 L. Ed. 210, 216 (Jackson, 1948). In these circumstances, defendant's arrest and the subsequent search of his person is unlawful and the evidence obtained on the person may not be used to sustain his conviction.

This case differs from the facts examined in *People* v. *Yulfo*, 71 P.R.R. 767, 769 (De Jesús, 1950), in which the evidence showed that when the officers went into the search-

ed house, defendant had a notebook in his hands, then he ran to Antonia Martínez' room and ". . . threw the pencil and the notebook on a wardrobe" (t. 7), a typical case of the criminal deed caught in fraganti. As to the applicable theory, it also differs from the case of *People* v. *Soto*, 77 P.R.R. 193, 203 (Belaval, 1954), where we held that when offenses are committed in fraganti in the presence of a peace officer, the offender may be arrested, and as an incident to this arrest, he may be searched.

In view of the foregoing, the judgment finding defendant guilty in the case at bar is reversed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Pérez Pimentel and Mr. Justice Serrano Geyls dissented.

Mr. Justice Serrano Geyls dissents because in his opinion: (1) there is sufficient evidence in the record to maintain that defendant Gonzalo Almodóvar was in possession and had control of the bar where the *bolita* material was found; and (2) because the evidence being sufficient to support the conviction, it is unnecessary to pass on the questions relating to the search of the person of the defendant.